Filed 10/19/22  P. v. Sparks CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>MARCUS DWAIN SPARKS,<br><br>    Defendant and Appellant. | E078815<br><br>(Super.Ct.No. FVI20001990)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County.  Shannon L. Faherty, Judge.  Affirmed.

Mark D. Johnson, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant Marcus Dwain Sparks appeals from a final judgment following a jury trial.  For the reasons set forth *post*, we affirm the judgment.

1

On December 21, 2021, an information charged defendant with oral copulation of Doe1 and Doe2 (collectively, the victims), minors under 10 years of age, under Penal Code[1] section 288.7, subdivision (b) (counts 1 and 2); and having intercourse with Doe1 under section 288.7, subdivision (a) (count 3). The information alleged that defendant committed all three counts between January 1, 2015, and May 1, 2020.

On February 25, 2022, a jury found defendant guilty of counts 1 and 2. The jury, however, was unable to reach a unanimous verdict on count 3.

On March 25, 2022, the trial court dismissed count 3 on the prosecution's motion. Thereafter, the court sentenced defendant to 15 years to life for each offense, to be served consecutively. The court also imposed fines and fees, and awarded credits.

On April 11, 2022, defendant filed a timely notice of appeal.

## FACTUAL AND PROCEDURAL HISTORY

Doe1 was born July 2010; M.J. (Father) is her father and defendant's daughter, C.S. (Mother), is her mother. Doe2 was born October 2010; she is the cousin of Doe1 but "has lived with the family for a long time" and considers Doe1 as her sister. Mother is her "mom," and Father is her "dad."

In early July 2020, Doe1 told Mother that both Father and defendant had molested her. Mother, assisted by law enforcement, made a pretext telephone call to defendant.

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

2

During the call, defendant told Mother that the victims showed defendant what Father had done to them. "By doin' it," and by "suckin' and all that kinda stuff."

When law enforcement interviewed defendant, defendant stated that he had wanted to know exactly what Father had done to the victims so defendant took his penis out of his pants, held it in his hand, and told the victims to show him what Father did. The victims obeyed. Defendant told the officers that Doe1 and Doe2 each had defendant's penis in their mouth for one-half of a second, or less.

During the trial, Doe1 testified. She stated that when she was eight or nine years old she was in defendant's apartment. Defendant asked her to go into his bedroom and once there, defendant asked Doe1 to show him what Father had done to her. Doe1 testified, "My grandpa said, [s]how me what [Father] did. So I did what [Father] told me when he did it. . . . Suck his thing." Doe1 stated that the "thing" was something that is "used to go to the bathroom" to "pee." She said defendant "sticked [the thing] out [of] his pants," by unzipping his pants and pulling it out. Doe1 then put "the thing" in her mouth to show defendant what Father had asked her to do. Doe1 stated that it made her feel "uncomfortable." She testified that she complied with defendant's request because "he was my grandpa and I didn't know. I didn't know—I didn't know— [¶] . . . I didn't know that it was—like, it was gross. I didn't know, like, I wasn't supposed to be doing that." Afterwards, Doe1 testified that "he put it inside my private area," while they were on the bed. She stated that defendant's penis was inside her vagina "like for five minutes. I'm not sure." Doe1 stated that the incident ended after "my sisters came and knocked on the door."

Doe2 also testified. She stated that when she and defendant were in a room, she "already felt uncomfortable because, like, my siblings aren't there, mom aren't there. I just already felt uncomfortable. And also because I know he's my grandpa and I know that he's not supposed to be showing me, like, his private part." Doe2 described a private part as being "down between the legs," and being used to go "pee." Doe2 then testified that defendant told her to put her mouth on his private part. Although Doe2 did not know how long defendant's private part was in her mouth, she testified that defendant's private part actually went into her mouth. The incident ended when Doe1 entered the room. Doe2 also stated that she "saw his private part in [Doe1], too" when another sister opened the door to defendant's room. Doe2 testified that she saw defendant's private part in Doe1's "behind."

Defendant testified on his own behalf. He stated that he was worried that the victims were being abused by Father. Therefore, he wanted to find out from the victims what Father had done to them. The prosecutor asked: "[W]hat was your goal with exposing your penis to [Doe1] and [Doe2]? What did you think that would answer?" Defendant responded, "It was just like a bait, a trap. They went for it." Defendant denied that the victims put his penis in their mouths because he stopped them. He also denied that he ever placed his penis inside either victim.

**DISCUSSION**

After defendant appealed, and upon his request, this court appointed counsel to represent him. Counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 and *Anders v. California* (1967) 386 U.S. 738 setting forth a statement of

4

the case, a summary of the facts, and potential arguable issues, and has requested this court to undertake a review of the entire record. Pursuant to *Anders*, counsel identified the following issue to assist the court in its search of the record for error:

1. "Did the prosecutor commit misconduct by indicating to the jurors that they could properly have decided whether appellant was guilty before deliberations began?"

We offered defendant an opportunity to file a personal supplemental brief, and he has not done so.

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the record for potential error. We are satisfied that defendant's attorney has fully complied with the responsibilities of counsel and no arguable issue exists. (*Id.* at p. 126; *People v. Wende*, *supra*, 25 Cal.3d at pp. 441-442.)

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

MILLER _____
Acting P. J.

We concur:

SLOUGH _____
J.

RAPHAEL _____
J.